IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

RENEE L. HAIRSTON,                          )
                                            )
                    Plaintiff,              )
                                            )
            v.                              )        1:17CV194
                                            )
NANCY A. BERRYHILL,                         )
Acting Commissioner of Social Security,     )
                                            )
                    Defendant.              )

MEMORANDUM OPINION, ORDER AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Renee Hairston ("Plaintiff") brought this action pursuant to Sections 205(g)

and 1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. §§ 405(g) and

1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security

denying her claims for Disability Insurance Benefits and Supplemental Security Income under,

respectively, Titles II and XVI of the Act.  The parties have filed cross-motions for judgment,

and the administrative record has been certified to the Court for review.

I.      PROCEDURAL HISTORY

Plaintiff protectively filed applications for Disability Insurance Benefits and

Supplemental Security Income Benefits on October 22, 2012, alleging a disability onset date

of August 15, 2011 in both applications.  (Tr. at 7, 196-206.)[1]  Her applications were denied

initially (Tr. at 57-80, 143-48) and upon reconsideration (Tr. at 81-142, 155-72).  Thereafter,

---

[1] Transcript citations refer to the Sealed Administrative Record [Doc. #14].

Plaintiff requested an administrative hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 173-74.) Plaintiff, along with her attorneys and an impartial vocational expert, attended the subsequent hearing on June 24, 2015. (Tr. at 7.) The ALJ ultimately concluded that Plaintiff was not disabled within the meaning of the Act from her alleged onset date through September 25, 2015, the date of her decision. (Tr. at 18.) On January 17, 2017, the Appeals Council denied Plaintiff's request for review of the decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review. (Tr. at 1-3.)

II.     LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of [the] review of [such an administrative] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal brackets omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is

evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that in administrative proceedings, "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2]

---

[2] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first two steps, and establishes at step three that the impairment "equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations," then "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual function[al] capacity ('RFC')." Id. at 179.[3] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can

---

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that pursuant to the administrative regulations, the "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be

"perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80.

However, if the claimant establishes an inability to return to prior work, the analysis proceeds

to the fifth step, which "requires the Commissioner to prove that a significant number of jobs

exist which the claimant could perform, despite [the claimant's] impairments." Hines, 453

F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able

to perform other work considering both [the claimant's RFC] and [the claimant's] vocational

capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d

at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving

that [the claimant] remains able to work other jobs available in the community," the claimant

qualifies as disabled. Hines, 453 F.3d at 567.

III.    DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful

activity" through her date last insured. Plaintiff therefore met her burden at step one of the

sequential evaluation process. At step two, the ALJ further determined that Plaintiff suffered

from the following severe impairments:

> degenerative disc disease of the lumbar spine with sciatica; obesity;
> hypertension; and diabetes mellitus.

(Tr. at 9.) The ALJ found at step three that none of these impairments, individually or in

combination, met or equaled a disability listing. (Tr. at 11-12.) Therefore, the ALJ assessed

Plaintiff's RFC and determined that she could perform light work,

---

determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

except she can occasionally engage in stooping, no constant standing, and cannot climb ropes, ladders, or scaffolds. [She] should avoid concentrated exposure to workplace hazards such as moving machinery and unprotected heights.

(Tr. at 12.) Based on this determination, the ALJ determined at step four of the analysis that Plaintiff could not perform her past relevant work. (Tr. at 16.) However, the ALJ found at step five that, given Plaintiff's age, education, work experience, RFC, and the testimony of the vocational expert as to these factors, she could perform other jobs available in the national economy. (Tr. at 17-18.) Therefore, the ALJ concluded that Plaintiff was not disabled under the Act. (Tr. at 18.)

Plaintiff now challenges the ALJ's (1) evaluation of opinion evidence from treating physician Edwin Avbuere, M.D., (2) credibility assessment with respect to Plaintiff's subjective complaints of pain, and (3) step five determination, particularly with regard to the questioning of the Vocational Expert. Based on these alleged errors, she also contends that reversal, rather than remand, is the appropriate remedy in this case. However, after a thorough review of the record, the Court finds that none of these contentions merit remand or reversal for benefits, and the Court therefore recommends that the Commissioner's decision be affirmed.

A.    Treating physician opinion

Plaintiff first contends that the ALJ failed to properly weigh the opinions of Dr. Avbuere in accordance with 20 C.F.R. § 404.1527(c)(2), better known as the "treating physician rule." The Fourth Circuit has held that for claims, like Plaintiff's, that are filed before March 24, 2017, the ALJ evaluates medical opinion evidence in accordance with 20 C.F.R. §§ 404.1527(c) and 416.927(c) and the "treating physician rule" embodied within the regulations. Brown v. Comm'r Soc. Sec., 873 F.3d 251, 255 (4th Cir. 2017). Under the regulations,

"medical opinions" are "statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." Id. (citing 20 C.F.R. § 404.1527(a)(1)); see also 20 C.F.R. § 416.927(a)(1). While the regulations mandate that the ALJ evaluate each medical opinion presented to him, generally "more weight is given to 'the medical opinion of a source who has examined you than to the medical opinion of a medical source who has not examined you.'" Brown, 873 F.3d at 255 (quoting 20 C.F.R. § 404.1527(c)(1)); see also 20 C.F.R. § 416.927(c)(1). And, under what is commonly referred to as the "treating physician rule," the ALJ generally accords the greatest weight—controlling weight—to the well-supported opinion of a treating source as to the nature and severity of a claimant's impairment, based on the ability of treating sources to

> provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) [which] may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

20 C.F.R. § 404.1527(c)(2); 20 C.F.R. § 416.927(c)(2). However, if a treating source's opinion is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with other substantial evidence in the case record," it is not entitled to controlling weight. Social Security Ruling 96–2p, Policy Interpretation Ruling Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions, 1996 WL 374188 (July 2, 1996) ("SSR 96–2p"); 20 C.F.R. § 404.1527(c)(2); 20 C.F.R. § 416.927(c)(2); see also Brown,

873 F.3d at 256; Craig, 76 F.3d at 590; Mastro, 270 F.3d at 178.[4]  Instead, the opinion must

be evaluated and weighed using all of the factors provided in 20 C.F.R. § 404.1527(c)(2)-(c)(6),

including (1) the length of the treatment relationship, (2) the frequency of examination, (3) the

nature and extent of the treatment relationship, (4) the supportability of the opinion, (5) the

consistency of the opinion with the record, (6) whether the source is a specialist, and (7) any

other factors that may support or contradict the opinion.  Of particular significance in the

present case, even if an opinion by a treating physician is given controlling weight with respect

to the nature and severity of a claimant's impairment, opinions by physicians regarding the

ultimate issue of whether a plaintiff is disabled within the meaning of the Act are never

accorded controlling weight because the decision on that issue is reserved for the

Commissioner alone.  20 C.F.R. § 404.1527(d).  "Thus, for example, when a medical source

renders an opinion that a claimant is 'disabled' or 'unable to work,' the ALJ will consider 'all

of the medical findings and other evidence that support' the medical source's opinion, but will

not necessarily make a favorable disability determination." Brown, 873 F.3d at 256 (citing 20

C.F.R. § 404.1527(d)(1)); see also 20 C.F.R. § 416.927(d)(1).

Where an ALJ declines to give controlling weight to a treating source opinion, he must

"give good reasons in [his] ... decision for the weight" assigned, taking the above factors into

account. 20 C.F.R. § 416.927(c)(2). "This requires the ALJ to provide sufficient explanation

---

[4] For claims filed after March 27, 2017, the regulations have been amended and several of the prior Social Security Rulings, including SSR 96-2p, have been rescinded.  The new regulations provide that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 404.1520c.  However, the claim in the present case was filed before March 27, 2017, and the Court has therefore analyzed Plaintiff's claims pursuant to the treating physician rule set out above.

for 'meaningful review' by the courts." <u>Thompson v. Colvin</u>, No. 1:09CV278, 2014 WL 185218, at *5 (M.D.N.C. Jan. 15, 2014) (quotations omitted); <u>see also</u> SSR 96–2p (noting that the decision "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight").

Here, Dr. Avbuere issued several nearly identical opinions regarding Plaintiff's general ability to work, but failed to offer any work-related limitations. On April 18, 2013, and on November 14, 2013, Dr. Avbuere listed Plaintiff's impairments and provided the following statement:

> These medical problems have impaired [Plaintiff's] ability to perform optimally in her duties in the workplace. She is in constant pains [sic] in the lower back with radiation to the left leg. This impaires [sic] her sleep leading to constant fatigue. It is my opinion that she is permanently disabled.

(Tr. at 355, 457.) On June 18, 2015, Dr. Avbuere issued another letter, again listing Plaintiff's impairments but omitting his previous explanation linking her disability to any specific impairments or symptoms, and stating simply:

> These medical problems have impaired [Plaintiff's] ability to perform optimally in her duties in the workplace. It is my opinion that she is permanently disabled.

(Tr. at 459.) The ALJ specifically considered Dr. Avbuere's letters in her decision, but ultimately assigned them little weight. In doing so, she explained as follows:

> Given that Dr. Avbuere has long been [Plaintiff's] treating physician, his opinion must be given particular attention and weighed carefully. That being said, the issue of whether a claimant is disabled and unable to work is reserved to the Commissioner. After analyzing the entire record of evidence, the undersigned must give these opinions by Dr. Avbuere little weight as they are

9

not supported by the other evidence in the record, including his own treatment notes in which he maintains, and encourages, [Plaintiff] to engage in regular physical exercise, including walking up stairs. Additionally, the medical source opinion does not contain specific medical reasoning from the doctor that establishes the basis for an assessment of being permanently disabled. Rejection of a treating physician's opinion is appropriate when it is so brief and conclusory that it lacks persuasive weight, or where it is unsubstantiated by any clinical or laboratory findings, or if it is not accompanied by objective medical evidence, especially when it is arguably a non-medical opinion offered on a matter reserved for the Commissioner.

(Tr. at 16.)

As the ALJ correctly highlights, and as the Court sets out above, opinions as to the ultimate issue of whether a plaintiff is disabled within the meaning of the Act are never accorded controlling weight because the decision on that issue is reserved for the Commissioner alone. 20 C.F.R. § 404.1527(d). Accordingly, the ALJ was not required to give any special deference to Dr. Avbuere's conclusions of permanent disability. Because the provider's letters offered no further, substantive opinions as to Plaintiff's functional abilities, the ALJ could have ended her analysis there. However, out of an abundance of caution, and appreciating Dr. Avbuere's position as a treating physician, the ALJ proceeded to further examine the opinions using the factors provided in 20 C.F.R. § 404.1527(c)(2)(i)-(c)(6). In terms of supportability and consistency, the ALJ noted that, throughout the period covered by his opinions, Dr. Avbuere repeatedly "urged [Plaintiff] . . . to restrict her calorie intake, engage in healthy eating habits, [and] engage in regular exercise lasting at least 30 to 45 minutes 3 to 5 times per week and daily walking." (Tr. at 14, 16, 383, 463.) Indeed, in the treatment record for April 18, 2013, the date of the first letter, Dr. Avbuere notes that Plaintiff appeared to be in "mild pain," with all negative tests, and Plaintiff was "counselled extensively" on diet, behavior modification (such as using the stairs instead of an elevator) and the need for regular

exercise 30-45 minutes 3-5 times a week. (Tr. at 382-83.) Likewise, in the treatment record of November 14, 2013, the date of the next letter, Dr. Avbuere again notes tenderness and "mild pain with movement" but "[n]o pain at rest" and "[a]ble to sit." Her flexion, rotation, and bending were decreased, but Dr. Avbuere again recommended using the stairs instead of the elevator, walking instead of driving, and adhering to a regular exercise routine. (Tr. at 477.) These recommendations are again reflected in the treatment record for March 19, 2015, the last entry in the record from Dr. Avbuere before his June 18, 2015 letter. (Tr. at 463.) These recommendations were also echoed by Dr. Thomas R. Saullo, Plaintiff's interventional spine care specialist, who prescribed a home exercise program to combat her lower back pain and diabetes. (Tr. at 14, 335.) Evidence of Plaintiff's noncompliance with these activities appears throughout the record, including in her own testimony. (Tr. at 14, 46-47, 338.) Although Dr. Avbuere tempered his exercise recommendations by further instructing Plaintiff "to avoid bending, heavy lifting, and prolonged sitting and standing" (Tr. at 14, 383), none of these restrictions are inconsistent with the RFC or support Plaintiff's inability to work at any exertional level. In short, as explained by the ALJ, Dr. Avbuere's letters contain no "specific medical reasoning" to establish a basis for his conclusory opinion of total and permanent disability. Accordingly, the Court finds no basis for remand.

B.      Credibility

Plaintiff next contends that the ALJ failed to properly assess her credibility in assessing her subjective complaints of pain. Under the applicable regulations, the ALJ's decision must "contain specific reasons for the finding on credibility, supported by the evidence in the case record." Social Security Ruling 96–7p, Policy Interpretation Ruling Titles II and XVI:

Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements, 1996 WL 374186 (July 2, 2996) ("SSR 96–7p"); see also 20 C.F.R. § 404.1529.[5] Toward this end, the Fourth Circuit in Craig v. Chater set out a two-part test for evaluating a claimant's statements about symptoms. 76 F.3d at 594-95. "First, there must be objective medical evidence showing 'the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged.'" Id. at 594 (citing 20 C.F.R. § 416.929(b)); see also 20 C.F.R. § 404.1529(b). If the ALJ determines that such an impairment exists, the second part of the test then requires him to consider all available evidence, including Plaintiff's statements about her pain, in order to evaluate "the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work." Craig, 76 F.3d at 596.

"According to the regulations, the ALJ 'will not reject [a claimant's] statements about the intensity and persistence of [her] pain or other symptoms or about the effect [her] symptoms have on [her] ability to work solely because the available objective medical evidence does not substantiate [her] statements.'" Lewis v. Berryhill, 858 F.3d 858, 866 (4th Cir. 2017) (quoting 20 C.F.R. § 404.1529(c)(2), § 416.929(c)(2)). In short, objective medical evidence of

---

[5] Effective March 28, 2016, see Social Security Ruling 16–3p, 2016 WL 1237954 (Mar. 24, 2016), the Social Security Administration superseded SSR 96–7p with Social Security Ruling 16–3p, 2016 WL 1119029, at *1 (Mar. 16, 2016). The new ruling "eliminat[es] the use of the term 'credibility' from . . . sub-regulatory policy, as [the] regulations do not use this term." Id. The ruling "clarif[ies] that subjective symptom evaluation is not an examination of the individual's character," id., and "offer[s] additional guidance to [ALJs] on regulatory implementation problems that have been identified since [the publishing of] SSR 96–7p," id. at *1 n.1. The ALJ's decision in this case predates the effective date of SSR 16–3p, and "because SSR 16–3p changes existing Social Security Administration policy regarding subjective symptom evaluation, that Ruling does not apply retroactively, see Bagliere v. Colvin, No. 1:16CV109, 2017 WL 318834, at *4–8 (M.D.N.C. Jan. 23, 2017) (Auld, M.J.), recommendation adopted, slip op. (M.D.N.C. Feb. 23, 2017) (unpublished) (Eagles, J.); see also Hose v. Colvin, No. 1:15CV00662, 2016 WL 1627632, at *5 n.6 (M.D.N.C. Apr. 22, 2016) (unpublished) (Auld, M.J.), recommendation adopted, slip op. (M.D.N.C. May 10, 2016) (Biggs, J.)." Ivey v. Berryhill, No. 1:16CV1304, 2017 WL 4236558 at *6 n.7 (M.D.N.C. Sept. 22, 2017) (Auld, M.J.).

pain is not required at step two of <u>Craig</u>. <u>Id.</u> However, this maxim does not render any available objective evidence irrelevant at that step. Rather, a claimant's "symptoms, including pain, will be determined to diminish [her] capacity for basic work activities [only] to the extent that [her] alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(c)(4); <u>see also</u> <u>Hines</u>, 453 F.3d at 565 n.3 ("Although a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence.").

This approach facilitates the ALJ's ultimate goal, which is to accurately determine the extent to which Plaintiff's pain or other symptoms limit her ability to perform basic work activities. Relevant evidence for this inquiry includes Plaintiff's "medical history, medical signs, and laboratory findings" <u>Craig</u>, 76 F.3d at 595, as well as the following factors set out in 20 C.F.R. § 404.1529(c)(3):

> (i) [Plaintiff's] daily activities;
>
> (ii) The location, duration, frequency, and intensity of [Plaintiff's] pain or other symptoms;
>
> (iii) Precipitating and aggravating factors;
>
> (iv) The type, dosage, effectiveness, and side effects of any medication [Plaintiff] take[s] or [has] taken to alleviate [her] pain or other symptoms;
>
> (v) Treatment, other than medication, [Plaintiff] receive[s] or [has] received for relief of [her] pain or other symptoms;
>
> (vi) Any measures [Plaintiff] use[s] or [has] used to relieve [her] pain or other symptoms (e.g., lying flat on [her] back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and

(vii) Other factors concerning [Plaintiff's] functional limitations and restrictions due to pain or other symptoms.

Where the ALJ has considered these factors and has heard Plaintiff's testimony and observed her demeanor, the ALJ's credibility determination is entitled to deference. See Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). Accordingly, the Court "will reverse an ALJ's credibility determination only if the [plaintiff] can show it was 'patently wrong.'" Powers v. Apfel, 207 F.3d 431, 435 (7th Cir. 2000).

In the present case, Plaintiff never mentions 20 C.F.R. § 404.1529(c), SSR 96-7p, Craig, or any other relevant Fourth Circuit cases regarding credibility. Instead, Plaintiff cites to older cases from the Eleventh Circuit. (Pl.'s Br. [Doc. #19] at 13-15.) Notably, in doing so, she omits any reference to the Fourth Circuit's recent, and relevant, decision in Mascio v. Colvin, 780 F.3d 632, 639 (4th Cir. 2015).

In Mascio, the ALJ erred by determining the claimant's RFC before assessing her credibility when he applied boilerplate language stating, in pertinent part, that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." Id. (citation omitted). This language erroneously implied that Mascio's pain and residual functional capacity were "separate assessments to be compared with each other." Rather, under the applicable regulatory provisions, "an ALJ is required to consider a claimant's pain *as part of* his analysis of residual functional capacity." Mascio, 780 F.3d at 639 (emphasis added).

Here, the ALJ utilized boilerplate identical to that in <u>Mascio</u>. (Tr. at 13.) However, <u>Mascio</u> further explains that, even where an ALJ makes a "backwards" credibility determination or utilizes "meaningless boilerplate," "[t]he ALJ's error would be harmless if he properly analyzed credibility elsewhere." <u>Id.</u> In that case, the ALJ simply failed to perform such an analysis. In contrast, the ALJ in the present case recounted Plaintiff's testimony and related her reasons for discounting the severity and limiting effects of Plaintiff's impairments based on the record as a whole. (Tr. at 13-15.) As recounted in the administrative decision,

> [Plaintiff] testified that she stopped working in March of 2010 because the company she worked for lost the patient she attended as a client, and not for reasons associated with her impairments. In evaluating [Plaintiff's] testimony, the undersigned notes that [Plaintiff] had a good work record prior to her alleged disability onset in 2011, a factor which may enhance her credibility. However, the record also shows that [Plaintiff] maintained her good work record despite having had her impairments and symptoms since at least 2008 and/or 2009, a factor which appears inconsistent with the alleged severity of her impairments. As discussed more fully below, the evidence also shows that [Plaintiff] has been prescribed only conservative treatment for her back and diabetic conditions, and she has had a positive response to prescribed medication without alleging or reporting significant side effects.

(Tr. at 13.) The ALJ then went on to chronicle the following, additional factors in Plaintiff's credibility determination:

- Plaintiff serves as the primary caregiver for her 11-year-old granddaughter (and had since before the alleged onset date of August 15, 2011, when the granddaughter would have been 7 years old) and is able to fix meals for her, makes sure she is ready for school each morning, run errands independently, pay bills, and go to church twice weekly. "Such admissions are inconsistent with her allegations of debilitating and disabling symptoms." (Tr. at 13.)

- In March 2012, Dr. Saullo noted that, despite Plaintiff's complaints of increasing low back pain over the preceding eight months, she was taking no medication for her pain and exhibited minimal symptoms upon exam. (Tr. at 13-14, 325-27.)

- In light of Plaintiff's December 2012 MRI results, which showed mild to moderate left foraminal narrowing, Dr. Saullo had Plaintiff "educated by a physical therapist on therapeutic exercise as part of a home exercise program, including scissor kicks, bicycling, wall slides, lunges, step ups, and raised pushups. [Plaintiff] was able to perform all of these exercises without increased symptoms." (Tr. at 14, 333-35.) However, when Plaintiff returned to Dr. Saullo in March 2013, complaining of continuing back pain, he noted that (1) "she had not been compliant with her home exercise program as instructed by physical therapy," and (2) she "declined a steroid injection" for the pain. (Tr. at 14, 336-38) Again, these findings suggest that Plaintiff's back pain was not as severe or disabling as she alleged.

- As discussed above, the ALJ further noted that, throughout the period covered by his opinions, Dr. Avbuere repeatedly "urged [Plaintiff] . . . to restrict her calorie intake, engage in healthy eating habits, [and] engage in regular exercise lasting at least 30 to 45 minutes 3 to 5 times per week and daily walking." (Tr. at 14, 16, 383, 463.) However, Plaintiff admitted non-compliance with these recommendations and medication management for her diabetes. (Tr. at 14, 15, 46-47, 338.)

In sum, this is not a case like Mascio, in which the ALJ failed to explain "how he decided which of [the plaintiff's] statements to believe and which to discredit." 780 F.3d at 640. In Mascio, the plaintiff alleged *specific functional limitations* which the ALJ discounted

without explanation. Here, in contrast, Plaintiff simply alleges a level of fatigue and pain which precludes all work activity. The ALJ clearly addressed these allegations in a manner consistent with the regulations as well as Craig and Lewis, i.e., by considering all of the evidence, both subjective and objective, along with the factors set out in 20 C.F.R. § 404.1529(c)(3). Thus, the ALJ's determination is sufficiently explained and is supported by substantial evidence, and the Court finds no error.

   C.     Step Five

   Plaintiff next challenges the ALJ's step five finding, arguing that "the hypothetical question upon which the [vocational expert] relied failed to include all of the limitations resulting from" Plaintiff's impairments. (Pl.'s Br. at 16.)[6] "To be relevant or helpful, a vocational expert's opinion must be based upon consideration of all evidence of record, and it must be in response to a hypothetical question which fairly sets out all of the claimant's impairments." McPherson v. Astrue, 605 F. Supp. 2d 744, 779 (S.D. W.Va. 2008) (citing Walker v. Bowen, 889 F.2d 47, 51 (4th Cir.1989)).

   Here, as set out above, the ALJ determined that Plaintiff could perform light work, "except she can occasionally engage in stooping, no constant standing, and cannot climb ropes, ladders, or scaffolds." In addition, the ALJ determined that Plaintiff "should avoid concentrated exposure to workplace hazards such as moving machinery and unprotected heights." (Tr. at 12.) Despite Plaintiff's assertions to the contrary, the ALJ included all of these limitations when questioning the vocational expert. The ALJ first presented an individual capable of medium, rather than light, work, with additional restrictions to "no

---

[6] In making this argument, Plaintiff again relies entirely on Eleventh Circuit case law.

climbing of ropes, ladders, [or] scaffolds" and no "concentrated exposure to hazards." (Tr. at 49.) She then asked the expert to "lower the lifting restrictions to light" while keeping "the same non-exertional restrictions." (Id.) The vocational expert responded that such an individual could perform work as a companion, a mail sorter, a marker/ticketer, or a cleaner. (Tr. at 50-51.) The ALJ next added "the additional restriction that there should only be occasional stooping," and the expert answered that this would not change his testimony regarding the previously-identified light jobs. (Tr. at 51.)

Plaintiff's attorney asked the vocational expert if a limitation to "avoid prolonged sitting and standing," defined as meaning that the individual "need[s] a sit stand option every 30 minutes," would impact the light jobs he identified. (Tr. at 52.) Although the expert testified that this restriction would reduce the individual's ability to perform as a cleaner, he also asserted that "there would be other unskilled, light work, cashiering work, working in a laundry for example, being a mail clerk . . . [that would] allow the worker to alternate sitting and standing." (Tr. at 53.) The ALJ then requested that the expert clarify what "no prolonged standing" meant in vocational terms. (Id.) The expert defined prolonged in this context as "frequent, or constant." (Tr. at 53-54.) He reiterated that such a restriction would preclude the previously-identified cleaning job, but would not preclude the mail sorter or marker/ticketer positions, and would not preclude "unskilled light cashiering jobs, [such as] working at a movie theater [or a] parking garage." (Tr. at 54-55.) He then identified these cashiering jobs by DOT code and testified to the number of such jobs available in the state and national economies. (Tr. at 55.) The above testimony makes clear that the ALJ posed a

series of hypothetical questions which fairly set out all of the limitations included in her RFC assessment.[7]

D.     Remedy

Finally, Plaintiff contends that her case should be remanded for payment of benefits, rather than for a new hearing.  Because Plaintiff bases this challenge solely on the success of her treating physician and credibility arguments, which fail for the reasons set out above, this final argument is also without merit.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be AFFIRMED, that Plaintiff's Motion Summary Judgment [Doc. #18] be DENIED, that Defendant's Motion for Judgment on the Pleadings [Doc. #20] be GRANTED, and that this action be DISMISSED with prejudice.

IT IS ORDERED that Plaintiff's Motion [Doc. #17] to allow her brief to be filed conventionally will be GRANTED, but counsel for Plaintiff is cautioned that any future filings in this case or any other cases will need to be filed using the CM/ECF system.

This, the 2nd day of February, 2018.

/s/ Joi Elizabeth Peake
United States Magistrate Judge

---

[7] Plaintiff makes reference to the Vocational Expert's testimony, in response to questioning from Plaintiff's counsel, that if the person were off task 15 percent of the day, and due to pain needed to lie down, those restrictions would eliminate the positions.  However, the ALJ did not adopt those restrictions posed by Plaintiff's counsel, and the RFC determination is sufficiently explained and supported by substantial evidence, as noted above.